No. 19,151.

HANS D. ISENBERG, ET AL. *v.* F. E. WOITCHEK, ET AL.
(356 P. [2d] 904)

Decided November 14, 1960.

Mr. BENJAMIN E. SWEET, for plaintiffs in error.

Mr. FRANCIS W. JAMISON, Mr. C. RUSSELL GUMMIN, Mr. JOHN PHILLIP LINN, Mr. JAMES H. MURPHY, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE DOYLE.

THE parties will be referred to as they appeared in the trial court where plaintiffs in error were plaintiffs and defendants in error were defendants. The action was instituted for the purpose of obtaining an injunction terminating a right of way of defendants across the plaintiffs' land and demanding damages for a personal tort allegedly committed by defendants. In addition, an injunction was demanded against defendants' disturbing or destroying the plaintiffs' property and trespassing thereon.

The plaintiffs and defendants own mountain property in Jefferson County about 5 miles from the town of Evergreen. In 1932 plaintiffs' predecessor executed a grant to defendants' predecessor which gave a right of access across the land now owned and occupied by plaintiffs. The exact terms of this grant are as follows:

"For $1.00 and other valuable consideration, I, D. P. Wilmot of Evergreen, Colorado, hereby agree to give Florence M. Johnson of Denver, Colorado, her heirs and assigns a right of way through the W½ of Section 21, Township 5, Range 71 from the Cub Creek Road to and from the S½ of the NE¼ Section 20, Township 5, Range 71, Jefferson County, Colorado. I, Florence M. Johnson, hereby agree to keep the gate at main entrance of Cub Creek closed and see that the property belonging to D. P. Wilmot is not disturbed or destroyed in any way.

/s/ D. P. Wilmot
/s/ Florence M. Johnson"

In their complaint the plaintiffs allege that the defendants are using a roadway across the land of the plaintiffs and that this use grows out of the above agreement. It is further alleged that this did not create a valid easement and that defendants have been misusing the right by driving through the land of the plaintiffs at high speeds, by making unnecessary noises, creating unnecessary dust; that the defendants have filled in drainage ditches, have left the gates open and have refused to correct the abuses. A further allegation is that

the use of this road is not a way of necessity in that a county road furnishes access to the defendants' property and that this county road was not in existence at the time of the grant.

The answer admits the use of the roadway and alleges that the defendants have a right to use it by reason of the mentioned conveyance. Defendants admit that they filled in drainage ditches and that they left the gate open on one occasion, but deny the other allegations. Further allegations which appear in the counter-claim of the defendants describe the altercation between the plaintiff Hans D. Isenberg and the son of the defendants, and allege that their conduct grew out of the efforts of the plaintiffs to block the road and prevent their use of it.

The evidence at the trial consisted of testimony of an engineer who described the general area. The general tendency of this testimony was to show that the road across the land was not in fact useful to the defendants, that the county road was much better, that there was no longer any necessity for the defendants to traverse plaintiffs' land. Other testimony pertained to the relations between the parties and from this it would appear that defendants left the gate open on two occasions, that they have driven over the road at speeds ranging from 26 to 38 miles per hour, that they have caused dust which blows towards plaintiffs' house and aggravates Mrs. Isenberg's asthma; that the defendants have driven trucks across the road and have caused unnecessary noises. It would also appear that there is considerable ill feeling between the parties and that this was evidenced by the digging of unnecessarily deep drainage ditches by the defendants and by the attempted blocking of the road by the plaintiffs.

From a study of a map introduced by plaintiffs, it appears that the Isenberg land is located in the Southeast quarter of Section 21, whereas the defendants' land is in the Southeast quarter of Section 20. The Cub Creek

Road, which is mentioned in the grant, follows a general North-South course and touches Section 21 at the extreme Southeast portion. The alleged easement road courses in a semi-circle from a point on the Cub Creek Road at the Southeast corner of Section 21 in an East-West direction to a point on the Southwest side of the Southeast quarter of Section 21.

The court found all of these as facts and concluded that, although it would be best for all concerned if the roadway could be lawfully closed, "however, we are somewhat in doubt that the law will permit us to go that far."

The court also concluded against the defendants' claim of necessity or prescription and said:

" * * * So the only question is whether or not there has been a violation of the terms of the written instrument to the extent it might be canceled. Our conclusion is we cannot cancel this written instrument, from the evidence before the Court. Plaintiffs contend that, there being no description of the right of way, the defendants have no right to use this right of way. However, in this case, the defendants have been using a right of way over plaintiffs' lands for some length of time; and therefore at this late date after years of user the written instrument cannot fail because of the failure to designate therein a definite right of way. As one of these cases puts it, if a right of way is entered upon and used, the way becomes definite and fixed even though it may have been indefinite in its description.

"We are dealing in this case with an easement by grant, or possibly we should say by contract, which written instrument has no provision for forfeiture. In cases of this kind the law seems to be that the Court should enjoin the parties from doing those things which they should not do. Plaintiffs contend that the easement or right of way in this case was originally granted as a way of necessity. We find no evidence to support such a

contention and neither can we reach such a conclusion as a matter of law.

"We therefore conclude that the written document should not be canceled but that the defendants and all of them, and their agents, servants and employees are enjoined from at any time leaving any gates open, from driving over said right of way at speeds which cause excessive or unusual amounts of dust to rise from such travel; also from driving over said right of way at such speeds especially with heavy trucks as would cause excessive noises."

The trial court discounted the testimony pertaining to personal encounter, viewing this as exaggerated with some fault on both sides.

Defendants were enjoined from leaving the gates open, driving at speeds which cause dust, driving at speeds which cause excessive noise; and the plaintiffs were enjoined from digging ditches across the right of way other than small ones for proper drainage. The trial court's finding as to the sufficiency of the description was that although the writing did not definitely describe it "yet it has become fixed" (presumably by usage).

In seeking reversal, plaintiffs contend:

1. That the 1932 grant did not create a valid easement; that it was too vague and indefinite.

2. That the grant was one of necessity which was terminated when other access was provided.

3. That the easement or other grant was forfeited as a result of the misuse of the granted right by the plaintiffs, and particularly the defendants have failed to "see that the property * * * is not disturbed or destroyed in any way." Plaintiffs say that this imposed affirmative duties on defendants which they failed to satisfy.

The other contentions of plaintiffs are repetitious and need not be considered.

1. *The question whether an easement was granted.*

It is noteworthy that the 1932 conveyance from D. P.

Wilmot and Florence M. Johnson described the dominant and servient estates and indicated the place of entry and of exit of the alleged easement. It did not describe its width and did not show the exact course that it followed across the land of the plaintiffs. These deficiencies are the basis for the contention of the plaintiffs that no easement was granted because of the inadequacies of description. This issue must be determined contrary to plaintiffs' contention. The rule is that vagueness of description does not go to the existence or validity of an easement. While an extreme case of vagueness could result in a holding that no easement was granted, the present fact situation does not produce such a result. The general rule, supported by numerous cases, is set forth in an annotation in 110 A.L.R. 174-178 wherein the author states:

"It is a settled rule that where there is no express agreement with respect to the location of a way granted but not located, the practical location and user of a reasonable way by the grantor or owner of the servient estate, sufficiently locates the way, which will be deemed to be that which was intended by the grant."

See also 17 Am. Jur., *Easements,* sec. 102 (1957). Numerous cases are there cited in support of the proposition that the location of an easement is determined by the practical location in use by the grantee acquiesced in by the grantor at the time of the grant and a long time subsequent thereto.

In 3 Powell, *Real Property,* sec. 415 at 461, the author declares:

"When a conveyance is unclear as to the scope of the intended easement, the subsequent behavior of the parties can constitute a practical construction furnishing the missing details. Such resort to the behavior of the parties, however, will neither cut down a more inclusive scope clearly defined in the conveyance, nor permit a disregard of language in the conveyance."

And in 1 Thompson, *Real Property,* sec. 539 (Perm. ed. 1939), it is said:

" \* \* \* Where an easement is granted in general terms, its location may be subsequently fixed by an implied agreement arising out of its use and the grantor's acquiescence therein. A grant of a right of way over the adjoining land of a common grantor should not be so construed as to rob it of all meaning. The common-law rule is that ambiguous language used in a deed conveying an easement is to be construed favorable to the grantee. \* \* \* "

See also 2 *American Law of Property,* sec. 864, and 3 *Restatement, Property,* sec. 242 (1940).

The case of *Blanchard v. Holland,* 106 Colo. 147, 103 P. (2d) 18, 139 A.L.R. 165, holds that:

" \* \* \* Where a right of easement is clear and certain, even though testimony may be required to show its extent or location, as of a right of way, we think it is proper to determine these things as an incident to the granting of injunctive relief. \* \* \* "

The authorities clearly support the proposition that lack of specific description does not affect the validity of the easements, particularly where the conduct of parties has over a period of time located it. It follows that the trial court's conclusion denying plaintiffs' requested relief based upon invalidity of the grant was correct.

2. *The question whether the decree of the trial court was too vague.*

Plaintiffs rely on *DeReus v. Peck,* 114 Colo. 107, 162 P. (2d) 404, in support of their main contention that there is no easement. The decision in the *DeReus* case was that where the easement contains no boundary description or other identifying information such as where it begins and where it ends the case must be remanded for the purpose of obtaining the specific information and specifying it in the decree; that the decree must be cer-

tain where an easement by prescription is established. The Court said:

"The law is well settled in this jurisdiction that a decree for an easement must be definite and certain so that there may be no possible doubt as to its location, its width, length, and termini. *Starr v. People,* 17 Colo. 458, 30 Pac. 64; *Lieber v. People,* 33 Colo. 493, 81 Pac. 270; *Gyra v. Windler,* 40 Colo. 366, 91 Pac. 36; *Workman v. Stephenson,* 26 Colo. App. 339, 144 Pac. 1126; *Sprague v. Stead,* 56 Colo. 538, 139 Pac. 544; *Leach v. Manhart,* 102 Colo. 129, 77 P. (2d) 652.

"Under the authorities cited, the decree was defective in that it contained no definite and certain description locating the easement as the same crossed defendants' lands."

The easement in the case at bar is not subject to the description deficiencies present in the easement by prescription recognized in the *DeReus* case. Nevertheless, under the authorities cited, it is necessary to remand the case for further testimony and for more specific description in the decree.

■ 3. *The question whether the misuse herein was such as to demand a forfeiture of the easement.*

From a consideration of the testimony and of the findings of the trial court, we are convinced that there is no merit in the contention that defendants have forfeited their right as a result of violations. The trial court properly found that the violations were not substantial and did not justify the forfeiture remedy. The court's conclusion that forfeiture for misuse is not justified where no actual damage has resulted from the misuse was also correct. 17 Am. Jur., *Easements,* sec. 166 (1957), 2 Thompson, *Real Property,* sec. 698 (Perm. ed. 1939).

We conclude that the trial court's view with respect to the legal consequence of the alleged misuse of the easement was correct.

The judgment is affirmed in part, reversed in part

402

and remanded for further proceedings consistent with the views expressed herein.

MR. JUSTICE KNAUSS and MR. JUSTICE FRANTZ concurring.